UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-14122-CIV-MARRA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

RONALD R. FAULKNER, DANIEL R.
FAULKNER, DEVIN S. HAWKINS, as
Trustee of the KEVIN S. HAWKINS
REVOCABLE TRUST, CAROLE JEAN
JORDAN, as tax collector for INDIAN
RIVER COUNTY,

      Defendants.

_____/

## ORDER AND OPINION DENYING MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon the United States' Motion for Summary

Judgment Against All Defendants [DE 34]. The motion is fully briefed and ripe for

review. The Court has considered the entire Court file and is otherwise fully advised

in the premises.[1]

## Introduction

The United States filed the instant motion seeking a judgment that federal tax

liens against Ronald Faulkner attach to two properties in Vero Beach, Florida.

Defendant Daniel Faulkner, Ronald Faulkner's son, timely responded. The Court

_____

[1] Defendants Kevin S. Hawkins, as trustee for the Kevin S. Hawkins Revocable Trust ("Hawkins"), and
Carole Jean Jordan as Tax Collector for Indian River County ("Indian River County") did not respond to
the motion. The United States says, however, that it does not contest that Indian River County has
valid liens on Property 1 and Property 2 for property taxes. Nor does the United States dispute that its
federal tax liens are subordinate to those liens in accordance with 26 U.S.C. § 6323(b)(6). Similarly,
the United States does not dispute that Hawkins has a valid purchase money mortgage lien on Property
2 and that the United States' federal tax liens are subordinate to that lien in accordance with 26 U.S.C.
§ 6323(a) and the federal common law.

entered a $668,325.63 judgment against Ronald Faulkner for individual income tax liabilities, plus statutory additions and interest that continue to accrue. DE 10. Daniel Faulkner concedes that the United States' federal tax liens attach to a 50% interest in each of the properties. DE 36 at 2-3. Therefore, the United States asserts, the only questions remaining on summary judgment are whether the tax liens attach to all of Property 1 and whether foreclosure sales are appropriate.

<u>Undisputed Material Facts</u>

1. In 1980 or 1981, Ronald Faulkner and his wife, Joanne Faulkner, started a trucking brokerage business in Roanoke, Virginia. (Ex. 1 – Deposition of Ronald Faulkner, p. 26:16-26:18; p. 31:1-31:24; 32:25- 33:4; 33:5-33:8; 33:25-34:3; 36:16-36:24; 39:20-39:22; 40:5-40:21; 41:21-42:1; 46:21-47:3; 51:19-52:5).

2. Joanne Faulkner and Ronald Faulkner were both involved with the business and had distinct duties. (Ex. 1 – Deposition of Ronald Faulkner, p. 47:4 - 47:9; Ex. 2 - Deposition of Daniel Faulkner, p. 107:10-108:4)

3. The Faulkners ran the trucking business together and used the profits to pay for their lives together (Ex. 1 – Deposition of Ronald Faulkner, p. 91:25-92:13).

4. When the Faulkners moved to Florida in 2006, Joanne Faulkner and Ronald Faulkner were able to continue their business without disruption because it was computerized. This allowed them to book drivers and freight loads all over the continental United States and Canada. (Ex. 1 -Deposition of Ronald Faulkner, p. 48:25-51:5).

5.      NS Transportation, Inc. was incorporated in 2012.  Joanne Faulkner was the sole owner of NS Transportation; Ronald Faulkner was only an employee. (Ex. 1 – Deposition of Ronald Faulkner, p. 51:19-52:13; 53:2-53:17)

6.      Ronald Faulkner did not timely file an individual income tax returns for 1999, 2000, 2001, and 2002 even though he was aware as of the filing deadlines each year that he owed a debt to the IRS for individual income tax for the previous year.  (R. Faulkner Dep. 16:16-17:1; 18:10-19:2).

7.      On October 13, 2005, Ronald Faulkner and Joanne Faulkner filed for Chapter 7 Bankruptcy in the U.S. Bankruptcy Court for the Western District of Virginia, Case No. 05-74985. (Select Filings from Ronald and Joanne's Joint Chapter 7 Bankruptcy ("Bankruptcy Record"), DE 34, Exhibit 2, Pg. 1.)

8.      On March 10, 2006, the IRS filed a Proof of Claim in the Faulkners' bankruptcy in the amount of $364,308, which reflected that Ronald Faulkner had outstanding tax liabilities for 1995 to 2004. (DE 34, Ex. 2 Bankruptcy Record, Pg. 37.)

9.      The Faulkners objected to the IRS's claim in the bankruptcy.  Their objection was resolved by an Agreed Order that discharged their federal tax liability for years 1995 - 1998, and did not discharge their federal tax liability for the years 1999 - 2004. (DE 34, Ex. 2 Bankruptcy Record, Pg. 37-38.)

10.     Ronald Faulkner's nondischargeable tax debt for 1999 to 2002 totaled over $90,000 at the time the IRS filed its Proof of Claim. (DE 34, Ex. 2 Bankruptcy Record, Pg. 39-41.)

11. The Faulkners' bankruptcy case was closed on May 30, 2006. (DE 34, Ex. 2 Bankruptcy Record, Pg. 42.)

12. Ronald Faulkner did not file tax returns for 2005 or 2006. Ronald Faulkner filed his 2007 return on October 15, 2008. Ronald Faulkner filed his 2008 return on April 15, 2009. (DE 34, Ex. A to R.O. Decl., Pgs. 27, 33, 39, 44.)

13. On or about September 21, 2006, Ronald Faulkner filed individual income tax returns for 1999, 2000, 2001, and 2002 reporting amounts due. (DE 34, Ex. A to R.O. Decl., Pgs. 2, 11, 16, 21.) He did not submit payment of the amounts due at that time. (See generally, DE 34, Ex. A. to R.O. Decl., Pgs. 1-25.)

16. After moving to Florida in 2006, Joanne Faulkner learned that Ronald Faulkner had an extra-marital relationship with a woman in Florida that had begun in the early 1990s. (Ex. 1 – Deposition of Ronald Faulkner, 81:10-81:15; 82:7-82:8)

17. On or about October 12, 2007, Ronald and Joanne Faulkner acquired an interest in real property at 7556 15th St, Vero Beach, Florida ("Property 1"), which was conveyed to them as "Ronald Faulkner and Joanne C. Faulkner, his wife." (DE 34, Warranty Deed attached as Exhibit 4.) The Faulkners owned Property 1 as tenants by the entireties.

18. On the same date, the Faulkners executed a mortgage in the amount of $186,000. (DE 34, Mortgage and Satisfaction attached as Exhibit 5.)

19. In 2008, Joanne Faulkner learned that Ronald Faulkner fathered a child, Ryan Watson-Bly, by the woman with whom he had the extra-marital relationship.

Ryan Bly-Watson was born in 1993. (Ex. 1 – Deposition of Ronald Faulkner, 80:2-80:7; 82:7-82:22) (DE 34, Ex. 1 R. Faulkner Dep. 82:13-20; 168:15-20.)

20. On September 11, 2008, Ronald Faulkner transferred his interest in Property 1 to Joanne Faulkner, by quit-claim deed, which was recorded with the Clerk of the Circuit Court of Indian River County Florida in Book 2292, Page 773 on September 17, 2008. (DE 34, Quit-claim Deed attached as Exhibit 6.)

21. Before transferring his interest in Property 1 to Joanne Faulkner, Ronald Faulkner was aware that he owed substantial income tax liabilities to the United States for 1999 to 2002. (DE 34, Ex. 1 R. Faulkner Dep. 27:18-28:7.)

22. Ronald Faulkner testified that after his wife learned that he had a son as a result of his extra-marital relationship, Joanne Faulkner was unsure if she wanted to continue her relationship with him and discussed divorcing him. Based on advice from his attorney, Ronald Faulkner quit-claimed his interest in Property 1 to Joanne Faulkner in 2008 so that she would not have to worry about a fight over the property if they divorced. R. Faulkner Depo. at 83-90.

23. Although he did not file individual income tax returns for 2005, 2006, 2007, or 2008 by their due dates, Ronald Faulkner was aware as of April 15th of each of the following years that he owed a debt to the IRS for individual income tax. (DE 34, Ex. 1 R. Faulkner Dep. 19:3-5.).

24. In 2008 when he transferred his interest in Property 1, Ronald Faulkner owed the United States over $132,262.43 just for 1999, 2000, 2001, and 2002 individual income taxes, penalties, and interest, which had already been assessed. (DE 34, See Ex. A to R.O. Decl., Pgs. 1-25.)

25. Additionally, Ronald Faulkner owed income tax liabilities for 2005, 2006, and 2007, which were not yet assessed by the IRS. Ronald Faulkner was aware that he owed the IRS for individual income taxes for 2005 through 2007. (DE 34, Ex. 1 R. Faulkner Dep. 18:22-19:20.)

26. At the time Ronald Faulkner quit-claimed his interest in Property 1 to Joanne Faulkner, he had no other property of significant value. (Ex. 1 R. Faulkner Dep. 90:3-91:2.) At that time, Ronald and Joanne Faulkner jointly owned a 2008 BMW X5, a 2007 Chevy Tahoe, and a 2007 Mustang GT, value unknown. *See* DE 37-1, Dep. R. Faulkner, 90:17-19.

27. Joanne Faulkner did not pay Ronald Faulkner anything in exchange for his interest in Property 1. (Ex. 1 R. Faulkner Dep. 91:3-7.)[2]

28. Ronald Faulkner remained liable on the mortgage on Property 1 until it was released by a Satisfaction of Mortgage executed August 4, 2014 and recorded with the Clerk of the Circuit Court for Indian River County on August 5, 2014 at Book 2778, Page 2074. (DE 34, Ex. 5 Mortgage and Satisfaction.)

29. After Ronald Faulkner quit-claimed his interest in Property 1 to Joanne Faulkner, he continued to live in the home, and the Faulkners paid their household expenses, including for maintenance of the home and utilities, out of their joint bank account. (DE 34, Ex. 1 R. Faulkner Dep. 91:8-92:9.)

---

[2] In paragraph 19 of his Response (DE 37), which appears to pertain to paragraph 18 of the United States' Statement of Facts (DE 34-1), Daniel states that he disputes that Joanne Faulkner did not pay Ronald Faulkner anything in exchange for his interest in Property 1. See DE 37, ¶¶ 18-19. However, this is contrary to Ronald Faulkner's own testimony and Daniel does not offer any evidence that Joanne Faulkner paid anything for Ronald Faulkner's interest in the property. *Id.*

30.     On October 15, 2008, just one month after executing the quit-claim deed, Ronald Faulkner filed an individual income tax return for 2007 reporting a substantial amount due. (DE 34, Ex. A to R.O. Decl., Pg. 44.)

31.     Shortly thereafter, in November of 2008, the IRS made assessments totaling $65,800.68 against Ronald Faulkner for his 2006- and 2007-income tax, penalties, and interest. (DE 34, Ex. A to R.O. Decl., Pgs. 33, 39.)

32.     On December 21, 2010, the IRS recorded a Notice of Federal Tax Lien against Ronald Faulkner for his outstanding individual income tax liabilities for 1999 through 2002 and 2005 through 2008 with the Clerk of the Circuit Court for Indian River County Florida. (Exhibit D to Complaint.)

33.     On July 5, 2016, the IRS recorded with the Clerk of the Circuit Court for Indian River County, Florida, at Book 2947, Page 1046, a Refiled Notice of Federal Tax Liens for Ronald Faulkner's individual income tax liabilities for 1999, 2000, 2001, and 2002. (DE 34, NFTL Refile 1, attached as Exhibit 7.)

34.     On September 4, 2018, the IRS recorded with the Clerk of the Circuit Court for Indian River County, Florida, at Book 3145, Page 2341, a Refiled Notice of Federal Tax Liens for Ronald Faulkner's individual income tax liabilities for 2005, 2006, 2007, and 2008. (DE 34, NFTL Refile 2, attached as Exhibit 8.)

35.     In 2014, Joanne Faulkner purchased 2135 Island Drive, Vero Beach, Florida ("Property 2") from Kevin Hawkins, who built the house, for approximately $675,000.00.  She put approximately 40% down and the remainder was financed by a purchase money mortgage to Kevin Hawkins in the amount of $375,000. (Ex. 1 – Deposition of Ronald Faulkner, p. 5:22-5:24; 9:15-9:21; 65:7-65:8; Ex.

3-Deposition of Kevin Hawkins, p. 7:9-7:16; 8:13-9:11; 11:3-11:6; Ex. 6 –
Warranty Deed from Kevin Hawkins to Joanne Faulkner regarding 2135 Island
Drive, Vero Beach, Florida; Ex. 6 Promissory Note in the amount of $375,000).
(DE 34, Warranty Deed, attached as Exhibit 9.)  The note secured by the
mortgage on Property 2 was due in full on May 30, 2019. (*Id.*) There is a
balance due on the mortgage. (Answer of Kevin Hawkins, Doc. 17.)

36.     Joanne Faulkner used funds that she had obtained from the sale of a house she
owned in Virginia to buy Property 2.  Joanne purchased Property 2 in April
2014.  She purchased it because in moving to Florida she wanted to live on the
island. (Ex. 1 – Deposition of Ronald Faulkner, 90:24-91: 2; 97:23-98:6; 99:4-
99:10).

37.     On April 14, 2015, Joanne Faulkner died intestate.  (Relevant Filings from In
Re: Estate of Joanne Crist Faulkner, Case No. 312017CP000596 in the Circuit
Court of the Nineteenth Judicial Circuit in and for Indian River County
("Probate Record"), DE 34, Exhibit 10, Pg. 10.)

38.     **Daniel Faulkner and his father Ronald Faulkner became the two heirs to
Joanne Faulkner's estate, which included, among other things, the two
properties at issue.**[3]

39.     Prior to Joanne Faulkner's death in April 2015, the payments to Kevin Hawkins
on the note and mortgage were timely and were paid by Joanne Faulkner.  (Ex.

---

[3] Ronald Faulkner has a son from outside his marriage.  The parties do not dispute that because of this
fact, by operation of Florida law of intestate succession, Ronald Faulkner had a right to only half of the
property in Joanne Faulkner's estate.

3 – Deposition of K. Hawkins, p. 15:4-15:9; Ex. 15-Checks to Kevin Hawkins signed by Joanne Faulkner).

40. After Joanne Faulkner died, Ronald Faulkner paid expenses of Property 2 using funds in NS Transportation's bank account. (Ex. 1 - Deposition of Ronald Faulkner, p. 125:1-126:5)

41. After Joanne Faulkner's death, the mortgage payments to Kevin Hawkins for Property 2 were paid from NS Transportation, Inc.'s bank account, because the money in the company's bank account belonged to Joanne Faulkner, including $21,500.00 from the sale of Joanne Faulkner's doll collection that was placed in NS Transportation, Inc.'s bank account. Those payments were made at the accountant's instruction. (Ex. 1 - Deposition of Ronald Faulkner, p. 133:4-135:2; 135:19-136:19)

42. The property tax payments and HOA fees for Property 2 were also likely paid from NS Transportation, Inc.'s bank account. (Ex. 1 - Deposition of Ronald Faulkner, p. 137:1-137:19)

43. On June 12, 2017, Daniel J. Washburn, Sr. filed a Petition of Administration in the Circuit Court of the Nineteenth Judicial Circuit in and For Indian River County, State of Florida ("Circuit Court"), seeking to be appointed personal representative and administer the estate of Joanne Faulkner. (DE 10, Ex. 10 Probate Record, Pgs. 1-3.) The property of the estate included Property 1, Property 2, and NS Transportation Services, Inc., the business that Ronald and Joanne Faulkner had operated together, which was incorporated solely in Joanne Faulkner's name in 2012. (*Id.*; R. Faulkner Dep. 146:10-147:2).

44. On the same date, June 12, 2017, **over two years after Joanne Faulkner's death, Ronald Faulkner filed a Renunciation of Interest, waiving his right, title and interest to any and all assets of the Estate of Joanne Faulkner.** (DE 34, Ex. 10 Probate Record, Pg. 4.) **As a result, in October 2017, Daniel Faulkner became the sole owner of the two properties at issue.** DE 36 at 5.

45. The IRS levied on NS Transportation, Inc.'s bank account after Ronald Faulkner filed his renunciation of an interest in the assets of Joanne Faulkner and obtained $111,000 from NS Transportation, Inc.'s bank account. (Ex. 1 – Deposition of Ronald Faulkner, p. 10:11-10:17;11:20-11:21; 121:18-122:1).

46. At the time of his renunciation, Ronald Faulkner owned a Chevy High Country pick-up truck and a couple of hand guns, but otherwise had no assets of value. (DE 34, Ex. 1 R. Faulkner Dep. 174:1-175:12.)

47. Ronald Faulkner testified that he disclaimed his interest in Joanne Faulkner's estate so that his two sons would have the properties. R. Faulkner Depo. at 120-121.

48. On September 19, 2017, Mr. Washburn, having been appointed personal representative of the estate, filed a petition seeking leave to transfer the real property in the estate, Properties 1 and 2, to the sole beneficiary of the estate, Daniel Faulkner. (DE 34, Ex. 10 Probate Record, Pgs. 16-17.)

49. On October 3, 2017, the Circuit Court issued an order approving the petition for leave to transfer Property 1 and Property 2 to Daniel Faulkner. (DE 34, Ex. 10 Probate Record, Pg. 18.)

50.     On or about October 10, 2017, Mr. Washburn, as Personal Representative of the Estate of Joanne Crist Faulkner, conveyed Properties 1 and 2 to Daniel Faulkner by way of Personal Representative's Deeds, which were recorded on February 8, 2018, in the Records of Jeffrey R. Smith, Clerk of the Circuit Court Indian River County Florida at Book 3091 Page 846 and Book 3091 Page 848. (Exhibits A and B to Complaint.)

51.     On November 17, 2014, the IRS terminated an Installment Agreement with Ronald Faulkner. (Ex. A to R.O Decl., pgs. 6, 12, 17, 22, 28, 34, 40, 45.)

52.     On or before June 18, 2015, Ronald Faulkner submitted an Offer in Compromise that related to his tax liabilities for 1999 through 2002 and 2005 through 2008. (Ex. A to R.O. Decl., pgs. 6, 12, 17, 22, 29, 34, 40, 45; R.O. Decl. ¶ 13-14; Exs. C and D to R.O. Decl.; 4340s.)

53.     On July 8, 2016, the IRS rejected the Offer in Compromise submitted by Ronald Faulkner on or about June 18, 2015. (Ex. A. to R.O. Decl., Pgs. 7, 12, 17, 22, 29, 35, 40, 45.)

54.     On January 24, 2017, Ronald Faulkner submitted a request for an Installment Agreement that related to his tax liabilities for 1999 through 2002 and 2005 through 2008. (Ex. A. to R.O. Decl., Pgs. 7, 12, 17, 23, 29, 35, 40, 45.)

55.     Within 30 days of its rejection, Ronald Faulkner appealed the rejection of his proposed Installment Agreement. (Ex. 3 R.O. Decl. ¶ 8-9.)  On March 8, 2017, the Installment Agreement rejection appeal ended.  (Ex. 3 R.O. Decl. ¶¶ 10-12.)  This event is inaccurately reported on the Form 4340s as having occurred on April 10, 2017. (Ex. 3 R.O. Decl. ¶ 11.)

56.     The Court has already granted Count I of the Complaint – Reduce Federal Tax

        Assessments to Judgment - pursuant to a Joint Motion for Consent Judgment.

        DE 1; DE 9.  On May 25, 2018, the Court entered a $668,325.63 Consent

        Judgment against Ronald Faulkner for individual income tax liabilities, plus

        statutory additions and interest that continued to accrue.  DE 10.

## Standard of Review

        Under Federal Rule of Civil Procedure 56(a), the Court grants summary

judgment if the moving party demonstrates that there is no genuine issue as to any

material fact, and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue of

fact is "material" if it is a legal element of the claim under the applicable substantive

law which might affect the outcome of the case.  *Allen v. Tyson Foods, Inc.*, 121 F.3d

642, 646 (11th Cir. 1997).  An issue of fact is "genuine" if the record, taken as a

whole, could lead a rational trier of fact to find for the nonmoving party.  *Id.*;

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)

        The moving party has the initial burden of showing the absence of a genuine

issue as to any material fact.  *Id.* (citation omitted).  In deciding whether the moving

party has met this burden, the court must view the movant's evidence and all factual

inferences arising from it in the light most favorable to the non-moving party.

*Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993); *Anderson*, 477 U.S.

at 255.  Once the moving party satisfies its initial burden, the burden shifts to the

non-moving party to come forward with evidence showing a genuine issue of material

fact that precludes summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); see also Fed. R. Civ. P. 56(e).

<u>Discussion</u>

The Government seeks to attach federal tax liens against Ronald Faulkner for the years 1999, 2000, 2001, 2002, 2005, 2006, 2007, and 2008 to the two properties currently owned by his son, Daniel Faulkner. The Government also seeks to foreclose those properties. Daniel Faulkner inherited the two properties after the death of his mother, and after his father's renunciation of any interest in Joanne Faulkner's estate. It is undisputed that absent Ronald Faulkner's renunciation, Daniel Faulkner would only have inherited a 50% interest in the two properties.

The Government contends that (1) Ronald Faulkner's renunciation of any interest in Joanne Faulkner's estate was ineffective to prevent the tax liens against Ronald Faulkner from attaching to the ownership interest in the two properties that Ronald Faulkner otherwise would have inherited from his wife's estate, (2) Ronald Faulkner's quit-claim of his interest in Property 1 in 2008 to Joanne Faulkner was an effort to avoid the Government's 1999, 2000, 2001, and 2002 tax liens and should be set aside as a fraudulent transfer under Florida's Uniform Fraudulent Transfer Act ("FUFTA"). If that occurred, the Government argues it would result in Ronald Faulkner becoming the 100% owner of Property 1 upon Joanne Faulkner's death, and therefore (3) the 1999, 2000, 2001, 2002, 2005, 2006, 2007, and 2008 tax liens against

Ronald Faulkner attach to 100% of the interest in Property 1 and "at least" 50% of the interest in Property 2.[4]

Daniel Faulkner states that "[t]he Government is correct that Ronald Faulkner's renunciation of his interest in the estate of Joanne Faulkner is ineffective to prevent the 1999, 2000, 2001, 2002, 2005, 2006, 2007, and 2008 tax liens against Ronald Faulkner from attaching to the fractional interest in the two properties that Ronald Faulkner otherwise would have inherited from his wife's estate." DE 36 at 2. Therefore, asserts the Government, the only questions remaining on summary judgment are whether the tax liens attach to 75% of Property 1 (if the Court rules that it does not belong to Ronald Faulkner outright by way of his right of survivorship), or attach to 100% of Property 1. DE 34 at 20; 38 at 2. While Daniel Faulkner acknowledges that the tax liens attach to 50% of Property 2, the Government wrote in its initial brief that the tax liens "attach to at least a 50% interest in Property 2 . . ." DE 34 at 20. The Government did not elaborate further, and the Court is not certain what claims it has to Property 2 beyond 50%. The Government also asks the Court to decide if foreclosure sales are appropriate. *Id.*

The Government argues,

> [a]lthough the federal tax liens for 1999 to 2002 attach to Property 1 regardless of the subsequent transfer of Ronald Faulkner's interest to Joanne Faulkner, the liens for 2005 through 2008 arose after the transfer. The United States requests that the Court determine that Ronald Faulkner fraudulently transferred his interest in Property 1 to Joanne Faulkner, that the transfer is avoided, that the original conveyance to Ronald and Joanne Faulkner as tenants by the entireties controls the ultimate ownership interest and disposition of the property today, that Ronald Faulkner is the sole owner

---

[4] Joanne Faulkner, alone, acquired Property 2 in 2014. DE 37, Daniel Faulkner's Statement of Material Facts, ¶ 59, undisputed by the Government, DE 38-1.

pursuant to his right of survivorship, and that all of the federal tax liens attach to Property 1.

DE 34 at 12.

Addressing Florida's Uniform Fraudulent Transfer Act, Daniel argues FUFTA cannot be used to set aside Ronald Faulkner's transfer of his interest in Property 1 to his wife because FUFTA excludes property held as tenancy by the entireties[5] where, as here, a creditor holds a claim against only one spouse. Therefore, Daniel asserts, there is no basis to set aside Ronald Faulkner's transfer of his interest in Property 1 to Joanne Faulkner pursuant to FUFTA. *In re Sinnreich*, 391 F.3d 1295, 1297 (11th Cir. 2004) ("[W]hen property is held as a tenancy by the entireties, only the creditors of both the husband and wife, jointly, may attach the tenancy by the entireties property; the property is not divisible on behalf of one spouse alone, and, therefore, it cannot be reached to satisfy the obligation of only one spouse.") **Thus, Daniel argues, the 1999, 2000, 2001, and 2002 tax liens can attach to only a 50% interest in Property 1.**[6] Moreover, Ronald disputes that the reason for the quit-claim deed was to fraudulently avoid the tax liens at issue.

The Government asserts that Property 1 does not qualify for FUFTA's tenancy by the entireties exclusion because it was encumbered by valid liens at the time of transfer and property held as tenants by the entireties is subject to process by the United States for a tax debt of only one spouse. In support of this argument, it cites

---

[5]  "In Florida, real and personal property acquired by a married couple is afforded a presumption of tenancy by the entireties ownership." *In re Hinton*, 378 B.R. 371, 377 (M.D. Fla. 2007) citing *Beal Bank, SSB v. Almand and Associates*, 780 So.2d 45, 52 (Fla. 2001) (recognizing history of tenancy by the entireties presumption in real property, and concluding that the presumption also applies to financial accounts).

[6]  This appears to be in agreement with the Government's statement, "the federal tax liens for 1999 to 2002 attach to Mr. Faulkner's one-half interest in the property." DE 34 at 10.

*U.S. v. Craft*, 535 U.S. 274, 283 (2002) for the proposition that "federal tax liens attach to an individual debtor's interest in a tenancy-by-entireties property even if state law limits creditors' ability to reach such property for an individual, rather than a joint, debt." DE 34 at 10. *Craft*, 535 U.S. at 284 ("This Court has already stated that federal tax liens may attach to property that cannot be unilaterally alienated.")[7] Although Florida's property laws protect properties held as tenancy by the entireties from creditors of only one spouse, state law protections do not shield tenancy by the entireties property from collection of federal tax debts of only one spouse.

Accordingly, Daniel Faulkner's argument that FUFTA cannot be used to attempt to avoid or set aside Ronald Faulkner's transfer of his interest in Property 1 to his wife is rejected. *United States v. Rodgers*, 461 U.S. 677, 701 (1983).

FUFTA, Florida Statutes § 726.105(1)(a), provides in pertinent part:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation … **With actual intent**[8] to hinder, delay, or defraud any creditor of the debtor;" **or** (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, **and the debtor:**
2. **Intended to incur**, or believed or reasonably should have believed that he or she would incur, **debts beyond his or her ability to pay as they became due**.

Given the difficulties in establishing a transferor's actual intent in fraudulent transfer cases, courts generally look at the totality of the circumstances and the

---

[7] 26 U.S.C. § 7403 (Action to enforce lien or to subject property to payment of tax) is intended to "reach the entire property in which a delinquent taxpayer has or had any 'right, title, or interest'"; therefore, "state-created exemptions against forced sale" are not effective against federal tax liens as long as the delinquent taxpayer has any "right, title, or interest" in the property. *United States v. Rodgers*, 461 U.S. 677, 701 (1983).

badges of fraud surrounding the transfers. *Cuthill v. Greenmark (In re World Vision Entertainment, Inc.)*, 275 B.R. 641, 656 (M.D. Fla. 2002). Badges of fraud include, but are not limited to: (1) the transfer was to an insider; (2) the debtor retained possession or control of the property after the transfer; (3) the transfer was concealed; (4) before the transfer was made the debtor had been sued or threatened with suit; (5) the transfer was of substantially all of the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor transferred the essential assets of the business to a lienor who transferred the asset to an insider of the debtor. Fla. Stat. § 726.105(1)(a).

While some of these badges of fraud exist around Ronald Faulkner's transfer of his interest in Property 1 to Joanne Faulkner, "actual intent is a question of fact." *Mayo v. Pioneer Bank & Trust Co.*, 270 F.2d 823, 831 (5th Cir. 1959)[9] ("Although a transfer may have the effect of hindering or delaying or defrauding creditors, incidental effect is not enough to satisfy the requirements of actual intent to defraud."); *In re Miller*, 39 F.3d 301, 304 (11th Cir. 1994) ("Whether a debtor in bankruptcy acted with the requisite 'intent to deceive' under § 523(a)(2)(B) is an issue of fact"); *In re Mitchell*, 496 B.R. 625, 631 (N.D. Fla. 2013) ("When a debtor's intent is at issue, objections to discharge generally cannot be resolved at the

---

[9] The Fifth Circuit in *Mayo* was analyzing the actual intent requirement that is stated in 11 U.S.C. § 107d(2)(d), but the Florida Uniform Fraudulent Transfer Act has also been interpreted to require proof of intent to deceive the creditor. *TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC*, 945 F. Supp. 2d 1331, 1347 (M.D. Fla. 2013); *In re McCuan*, 603 B.R. 829, 843 (M.D. Fla. 2019).

summary judgment stage."); *In re Bankest Capital Corp.*, 374 B.R. 333, 346 (S.D. Fla. 2007) ("summary judgment is particularly difficult to determine in the context of fraudulent transfer actions based upon actual fraudulent intent because the questions are inherently fact based") citing *State Farm Mut. Auto. Ins. Co. v. Weiss*, 410 F.Supp.2d 1146, 1159 (M.D. Fla. 2006) (fraud generally not properly the subject of summary judgment because it requires an examination of the relevant facts and circumstances); *In re Wingate*, 332 B.R. 649, 654 (M.D. Fla. 2005) ("genuine issue of material fact concerning the Debtor's intent with regard to the transfers of property, which precludes the Court from ruling on summary judgment pursuant to 11 U.S.C. § 727(a)(2)(A)").

The summary judgment standard requires that facts and inferences be drawn in favor of the non-moving party. Ronald Faulkner stated in his deposition that he quit-claimed his interest in Property 1 to Joanne Faulkner because she learned of his son from an extramarital affair and considered divorcing him. He stated it was his intention that by executing a quit-claim, it would assure her that she could have the entire property if they divorced.

Evaluating the facts in Ronald Faulkner's favor, as this Court must, the question of Ronald Faulkner's intent must be left for resolution by the factfinder. *In re Fruitticher*, Case No: 3:18-cv-1326, 2019 WL 1082355, at *7-8 (N.D. Fla. 2019). The question of intent is an intensely fact-specific inquiry which is why it is generally not decided at the summary judgment stage. *Id.* quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991).

<u>Statute of Limitations</u>

The United States is bound by the federal statute of limitations, not the FUFTA's statute of limitations. *United States v. Summerlin*, 310 U.S. 414, 416 (1940); *see also United States v. Fernon*, 640 F.2d 609, 612 (5th Cir. 1981); *United States v. Delgado*, 321 F.3d 1338, 1348 (11th Cir. 2003); *United States v. Moore*, 968 F.2d 1099, 1100 (11th Cir. 1992). Under 26 U.S.C. § 6502(a)(1), the Government has ten years from the date of assessment to file suit to reduce the assessment to judgment. Because this action was filed on April 6, 2018, more than ten years from the assessment dates for the tax periods of 1999 (assessment date November 27, 2006), 2000 (assessment date December 4, 2006), 2001 (assessment date December 11, 2006), and 2002 (assessment date December 18, 2006 and May 7, 2007), an action to reduce those assessments to judgment and foreclose on the properties at issue is barred by 26 U.S.C. § 6502(a)(1), unless those time periods were tolled. The Government contends that because of various installment agreement requested by Ronald Faulkner, the statute of limitations was tolled for a total of 489 days, providing the Government until April 7, 2018 to file this lawsuit. This action was filed on April 6, 2018.[10]

Daniel Faulkner argues that the United States has not shown the basis for its calculation of 30 days of tolling based on an installment agreement that was terminated on November 17, 2014. If this 30 day time period is not properly included in the Government's calculation, this action would be untimely.

---

[10] The Government's Motion for Summary Judgment [DE 34], p. 21.

Contrary to Daniel Faulker's contention, it is undisputed that on November 17, 2014, the IRS terminated an installment agreement with Ronald Faulkner. DE 34-1, ¶ 37; DE 37, ¶ 37. Thus, under 26 U.S.C. § 6331(i) and (k)(3), the applicable statute of limitations was tolled for 30 days after that installment agreement was terminated. DE 34, pg. 21. Daniel Faulkner did not raise any other legal arguments related to the calculation of the statute of limitations, or dispute any facts related to the United States' calculation of the tolling of the statute of limitations for collection. Therefore, the Court concludes that this suit is timely.

## Question of Foreclosure

The Government asks the Court to enter a decree of foreclosure and sale once the issues of Ronald Faulkner's interests in the Properties is decided. It is premature to decide this issue. If the Government ultimately prevails on the question of enforcing its liens on the subject property, the Court will resolve any outstanding issues relating to a foreclosure.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the United States' Motion for Summary Judgment Against All Defendants [DE 34] is denied.

**THE PARTIES ARE ADVISED THAT UNLESS THERE IS AN ADDITIONAL EXTENSION OF THE ORDER PLACING A STAY ON CONDUCTING TRIALS IN THE SOUTHERN DISTRICT OF FLORIDA, THE COURT INTENDS TO BEGIN THE TRIAL OF THIS CASE ON APRIL 27, 2020 AT 9:00 A.M. IN THE WEST PALM BEACH DIVISION OF**

THE COURT.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida, this 27th day of March, 2020.

KENNETH A. MARRA
United States District Judge